## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RSUI INDEMNITY COMPANY, | ) |
| *Plaintiff* | ) |
| v. | ) No. 21 C 1566 |
| JMT DEVELOPMENT INC. d/b/a OFF TRACK PUB, | ) Judge Virginia M. Kendall |
| *Defendant*. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff RSUI Indemnity Company ("RSUI") brings suit against JMT Development Inc. d/b/a Off Track Pub ("JMT") seeking declaratory judgment that it has no duty to defend or indemnify JMT in an underlying tort action in state court. Before the Court is RSUI's motion for judgment on the pleadings. (Dkt. 11). For the following reasons, RSUI's motion is granted.

### BACKGROUND

#### I. The Hayes Action

On November 16, 2020, Robert Hayes filed a complaint in state court against the insured JMT, and other non-insured defendants Emilio Cundari and Robert McCullagh, after McCullagh allegedly assaulted Hayes at the Off Track Pub. (Dkt. 1 at ¶ 10, Ex. B). Hayes alleges Off Track Pub employees served McCullagh alcohol until he was intoxicated and then removed him from the bar "due to [McCullagh's] dangerous and violent behavior." (*Id.* at ¶ 12, Ex. B at 2). Nonetheless, McCullagh was permitted to return and thereafter assaulted Hayes with his fists and feet without cause or provocation. (*Id.* at ¶ 13, Ex. B at 2–3). Hayes sued JMT under Illinois's Dram Shop Act, 235 ILCS 5/6-21, and for negligence. (*Id.* at ¶ 15, Ex. B at 2–3). He seeks damages

1

in excess of $50,000 for each count alleged against JMT. (*Id*. at ¶ 16, Ex. B 2–3). Hayes sued McCullagh for battery and Cundari under the Dram Shop Act as owner of the property where the Off Track Pub is located. (*Id*. at ¶ 15, Ex. B at 4–5).

## II. RSUI Insurance Policy

RSUI issued an insurance policy providing liquor liability coverage to JMT for its insured premises, Off Track Pub. (Dkt. 1 at ¶¶ 17–18, Ex. A). The Policy provides:

> We will pay those sums that **you** become legally obligated to pay as damages because of **injury** to which this insurance applies if liability for injury arises out of the selling, serving or furnishing of any alcoholic beverage. The sale, service and furnishing of the alcoholic beverage must take place at or from the **insured premises.**

(*Id*. at ¶ 19, Ex. A at 7) (emphasis in original). RSUI has "the right and duty to defend any suit" seeking such damages. (Dkt. 1 at ¶ 20, Ex. A at 7). Attached to the Policy is an Assault and Battery Limitation which states:

1. Notwithstanding anything contained elsewhere in this policy to the contrary, this insurance shall not apply to **damage** directly or indirectly arising from any actual or alleged **assault** and/or **battery** except as provided in 2. below.

2. This insurance shall apply to **damage** arising from actual or alleged **assault** and/or **battery** committed by **you** or your **employees** to protect persons and/or property….

3. For purposes of this endorsement, the following definitions apply:

   **Assault** means the apprehension of harmful or offensive contact between or among two or more persons by threat through words or deeds.

   **Battery** means the harmful or offensive contact between or among two or more persons.

   **Occurrence** means an accident, including continued or repeated exposure to substantially the same general harmful conditions.

2

(*Id*. at ¶¶ 23–24, Ex. A at 15) (emphasis in original). "[W]ords and phrases that appear in bold face have special meaning." (Dkt. 1 Ex. A at 7). The Policy, however, does not define "damage" as used in the Limitation. (*See generally* Dkt. 1 Ex. A).

### III. JMT's Claim for Coverage

On December 2, 2020, JMT sought coverage for the *Hayes* action under the Policy. (Dkt. 1 at ¶ 25). On January 4, 2021, RSUI denied the claim, explaining there is no coverage for the *Hayes* action by reason of the Assault and Battery Limitation. (*Id*. at ¶¶ 26–28, Ex. C). RSUI asked JMT to fill out a waiver of coverage form, but JMT did not respond. (*Id*. at ¶¶ 27, 31, Ex. C–D). On March 22, 2021, RSUI filed this action for a declaratory judgment that it is not required to defend or indemnify JMT for the *Hayes* action. (Dkt. 1).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party ... is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). "To survive a motion for judgment on the pleadings, 'a complaint must state a claim to relief that is plausible on its face.'" *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018) (quoting *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016)). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). The Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. *See*

*Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)).

## DISCUSSION

### I. Jurisdiction

As a threshold matter, JMT challenges this Court's diversity jurisdiction on grounds that RSUI has not adequately alleged that the amount in controversy exceeds $75,000. Where declaratory or injunctive relief is sought, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *America's Moneyline, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir.2004). In the insurance context, "both the cost of providing a defense and the potential cost of indemnifying Midland count toward the amount in controversy." *Midland Mgmt. Co. v. Am. Alternative Ins. Corp.*, 132 F. Supp. 3d 1014, 1019 (N.D. Ill. 2015) (citing *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006)). "This remains the case even where—as here—the underlying lawsuit remains pending." *Id*. RSUI has the burden to plausibly allege that the amount at stake exceeds the jurisdictional requirement. *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 732 (7th Cir. 2021). "'Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed' the amount-in-controversy threshold of a jurisdictional statute, 'then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Id*. (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

The *Hayes* action seeks "an amount in excess of $50,000 plus … costs" on two separate counts: dram shop liability and negligence. (Dkt. 1, Ex. B at 2–4). The Dram Shop Act, however, is "the sole remedy against a dramshop for injuries caused by intoxicated patrons." *Hopkins v. Powers*, 497 N.E.2d 757, 759 (Ill. 1986); *Charles v. Seigfried*, 651 N.E.2d 154, 158 (Ill. 1995) ("[T]he General Assembly has preempted the entire field of alcohol-related liability through its

passage and continual amendment of the Dramshop Act."). For this reason, the Court declines to consider the amount of damages alleged in the negligence count against JMT towards the amount in controversy.

Even absent the negligence count, however, RSUI has shown that the amount in controversy will plausibly exceed $75,000. Hayes alleges he "suffered severe and permanent personal injuries, experienced great pain and mental anguish and has incurred and will in the future incur, medical expenses, and has been hindered in his employment, thereby losing wages that he would have otherwise earned." (Dkt. 1 Ex. B at 2). Such severe and lasting damage could easily exceed $75,000. *See e.g., Midland Mgmt.*, 132 F. Supp. 3d at 1019 (N.D. Ill. 2015) ("[T]he damages sought by the [plaintiffs] for their medical injuries—which they describe as including 'permanent personal injury,' and current and future 'pain and suffering' and 'disability and disfigurement,' … could easily exceed $75,000."). Hayes also seeks his own costs as damages, which if awarded would add to that amount. (Dkt. 1 Ex. B at 3). It is true, as JMT asserts, that the Dramshop Act limits liability for final judgments awarded on or after January 1, 2021 to $72,671.24. *See* 235 ILCS 5/6-21(a) (directing Illinois Comptroller to determine the liability limits for causes of action brought under the Act each year); Dram Shop Liability Limits, https://illinoiscomptroller.gov/agencies/resource-library/statutorily-required/dram-shop-liability-limits-2017-2021/). This does not, however, spell defeat for the Court's jurisdiction, for the costs of defending the suit must also be considered. Among other expenses, under the Policy, RSUI is obligated to pay as defense costs: (1) "[a]ll expenses [it] incur[s][;]" (2) [a]ll reasonable expenses incurred by [JMT] at [RSUI's] request to assist [RSUI] in the investigation or defense of the claim or suit, including actual loss of earnings up to $100 a day because of time off from work[;]" (3) [a]ll costs taxed against [JMT] in the suit[;]" and (4) pre and post-judgment interest. (Dkt. 1 Ex.

5

A at 7). Additionally, to prove the extensive injuries he alleges, Hayes will likely need to elicit expert testimony. Thus, in addition to attorney's fees, RSUI may plausibly incur rebuttal expert fees to adequately defend JMT. If successful, Hayes' damages will plausibly encroach on the statutory maximum and RSUI, given the broad definition of defense costs in the Policy, will plausibly incur at least a few thousand dollars (if not much more) defending the suit, bringing the aggregate amount past $75,000. Thus, the costs of indemnification and defense in the *Hayes* action plausibly exceed the jurisdictional threshold.

JMT argues, without explanation or citation to legal authority, that the Court cannot add attorney's fees and other defense costs to the amount in controversy because RSUI fails to define the word "damage" in the Policy. It is unclear what effect the lack of a definition for "damage" has on the jurisdictional threshold. The Policy provides: "We will pay those sums that you become legally obligated to pay as damages because of injury to which this insurance applies if liability for injury arises out of the selling, serving or furnishing of any alcoholic beverage." (Dkt. 1 at ¶ 19, Ex. A at 7). As articulated above, however, the very next section, details the defense costs RSUI will pay if it has a duty to defend JMT, which broadly includes "[a]ll expenses [RSUI] incur[s]" in defending the suit. (Dkt. 1 Ex. A at 7). Thus, the Policy itself contemplates financial exposure to RSUI in the form of both indemnification and defense costs, notwithstanding the fact that "damage" is undefined. RSUI demonstrates that the amount of controversy in the form of indemnification and defense costs for the *Hayes* action plausibly exceeds $75,000. The Court's jurisdiction is sound.

## II. RSUI's Obligation to Defend and Indemnify Under the Policy

RSUI argues it is entitled to judgment on the pleadings because there are no disputes of material fact and it is clear from the Policy that RSUI is not required to defend or indemnify JMT

in the *Hayes* action. The interpretation of an insurance policy under Illinois law is a "question[ ] of law that the court may resolve summarily." *Roman Cath. Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998). Under Illinois law, "insurance disputes are governed by general contract principles." *Sigler v. GEICO Casualty Co.*, 967 F.3d 658, 660 (7th Cir. 2020). These principles dictate that when the words of a policy are "clear and unambiguous," they must be given their "plain, ordinary, and popular meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004).

An insurer's duty to defend is broader than its duty to indemnify. *Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 327 (7th Cir. 2021) (citing Illinois law). A "duty to defend arises if any claim against the insured potentially comes within the coverage of the policy." *Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 603 (7th Cir. 2004) (citing Illinois law). To determine whether such a duty exists, the court must "compar[e] the allegations contained in the underlying claim to the policy language" with any doubts resolved in favor of the insured. *Id.*; *Am. Bankers Ins.*, 3 F.4th at 327. It is the insurer's burden to show that a claim is "entirely excluded" from coverage. *Hous. Auth.*, 378 F.3d at 603. "If the insurer owes no duty to defend, then it owes no duty to indemnify." *Id*.

The Policy at issue states: "We will pay those sums that **you** become legally obligated to pay as damages because of **injury** to which this insurance applies if liability for injury [that] arises out of the selling, serving or furnishing of any alcoholic beverage." (Dkt. 1 Ex. A at 7) (emphasis in original). RSUI is obligated to defend any suit seeking such damages from JMT. (*Id*.) Nonetheless, the Policy contains an Assault and Battery Limitation excluding from coverage "**damage** directly or indirectly arising from any actual or alleged **assault** and/or **battery** except … **damage** arising from actual or alleged **assault** and/or **battery** committed by **you** or your

7

**employees** to protect persons and/or property." (*Id*. at 15) (emphasis in original). RSUI argues the *Hayes* action falls within the purview of this limitation, divulging RSUI of its obligation to defend and indemnify JMT.

The *Hayes* action alleges McCullagh "assaulted and engaged in the sustained beating of [Hayes] with both his fists and feet" and did so "as a direct and proximate result of" JMT employees serving McCullagh alcohol and permitting him to reenter the bar despite knowing his dangerous state. (Dkt. 1 Ex. B at 2–3). On its face the action certainly seeks "damages … for injury [that] arises out of the selling, serving or furnishing of any alcoholic beverage[,]" which would ordinarily trigger RSUI's duty to defend. (Dkt. 1 Ex. A at 7). Nonetheless, the allegations of assault trigger the potential applicability of the Policy's Assault and Battery Limitation. The Limitation defines assault as "the apprehension of harmful or offensive contact between or among two or more persons by threat through words or deeds" and defines battery as "the harmful or offensive contact between or among two or more persons." (Dkt. 1 Ex. A at 15). There is no dispute that McCullagh beating Hayes with his fists and feet certainly falls within both of these definitions. There are also no allegations that JMT employees assaulted or battered Hayes. The alleged damages in the *Hayes* action are thus "damage[s] directly or indirectly arising from any actual or alleged assault and/or battery" not caused by JMT employees. (Dkt. 1 Ex. A at 15). The *Hayes* action falls squarely within the plain language of the Assault and Battery Limitation, precluding any possibility of coverage.

JMT argues the Court cannot reach this result at this stage because "[n]owhere in the Policy does [RSUI] define whether its defense, or attorneys' fees incurred on behalf of the insured are "damage" and thus excluded per the Limitation." (Dkt. 22 at 7). In this regard, JMT makes much of the fact that the word "damage[,]" although bolded, is undefined in the Policy. Under Illinois

8

law however, "a term or phrase is not ambiguous simply because it is undefined." *Levy v. Minnesota Life Ins. Co.*, 517 F.3d 519, 524 (7th Cir. 2008). Moreover, JMT's argument is spurious because RSUI's duty to defend is not based on whether the term "damage" encompasses defense costs, but on whether it encompasses the allegations in the *Hayes* action. *See St. Paul Fire & Marine Ins. Co. v. Vill. of Franklin Park*, 523 F.3d 754, 756 (7th Cir. 2008) ("To determine whether an insurer owes a duty to defend, we compare the allegations in the underlying complaints with the coverage provisions of the insurance policy. The duty to defend is only triggered if the facts alleged in the complaint fall within, or at least potentially within, the scope of the policy.") (internal citations omitted). By JMT's logic, the Policy could obligate RSUI to defend a claim even where there is no possibility it will be covered. Although the duty to defend is broader than the duty to indemnify, an insurer is not obligated to defend a case if "it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within or potentially within the insured's policy coverage." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). Here, the Court will not strain to find ambiguity where not exists. The allegations in the *Hayes* action pertain entirely to an alleged assault and/or battery, bringing the claim unambiguously within the purview of the Assault and Battery Limitation. For that reason, RSUI has no duty to defend or indemnify JMT in the *Hayes* action.

## CONCLUSION

For the foregoing reasons, RSUI's motion for judgment on the pleadings [11] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: November 10, 2021